

2009 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-3-2009

# Sasongko v. Atty Gen USA

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2736

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2009

Recommended Citation

"Sasongko v. Atty Gen USA" (2009). *2009 Decisions.* Paper 1791.
http://digitalcommons.law.villanova.edu/thirdcircuit_2009/1791

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2009 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———————

No. 07-2736

———————

DAMAR SASONGKO,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent

_____

On Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. A96 167 196
Immigration Judge: Donald Vincent Ferlise

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 18, 2009

Before: BARRY, SMITH and HARDIMAN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 3, 2009)
_____

OPINION
_____

PER CURIAM

        Damar Sasongko petitions for review of an order of the Board of Immigration

Appeals (BIA), which dismissed his appeal from an Immigration Judge's (IJ's) final

removal order.  We will deny the petition.

I.

Sasongko, a native and citizen of Indonesia, entered the United States in 2001.  He was placed in removal proceedings in 2003.  In an application filed in 2004,[1] Sasongko sought asylum and related relief claiming that he had been persecuted, and would be persecuted, on account of his homosexuality.  The IJ found that Sasongko was not credible, that his asylum claim was untimely, that he had filed a frivolous claim, that he was ineligible for voluntary departure, and that he had not met his burden of showing that he was eligible for relief pursuant to the Convention Against Torture (CAT).  The BIA reversed the IJ's findings that the claim was untimely, that the application was frivolous, and that Sasongko was ineligible for voluntary departure.  The BIA, however, explicitly adopted and affirmed the IJ's adverse credibility finding, and agreed that Sasongko had not met his burden of showing that he was likely to be tortured as required for CAT relief.  The BIA dismissed the appeal, but granted voluntary departure.  Sasongko filed a timely, counseled, petition for review.

---

[1] Sasongko filed two previous asylum applications.  Sasongko, who was apparently the victim of untrustworthy preparers, testified that he signed both of them when they were blank, and he was unaware of their contents.  We need not reach the issue of whether the IJ properly considered inconsistencies between Sasongko's testimony and the contents of these earlier applications, as the IJ's adverse credibility finding is supported by substantial evidence without reference to the earlier applications.

II.

We review the final order of the BIA, but to the extent that the BIA adopts parts of the IJ's opinion, we review the IJ's opinion to determine whether the BIA's decision to defer to the IJ was appropriate. Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005). "We will uphold the [adverse credibility] findings . . . to the extent that they are supported by reasonable, substantial and probative evidence on the record considered as a whole, and will reverse those findings only if there is evidence so compelling that no reasonable factfinder could conclude as the [IJ] did." Kayembe v. Ashcroft, 334 F.3d 231, 234 (3d Cir. 2003). In general, "minor inconsistencies and minor admissions that reveal nothing about an . . . applicant's fear for his safety are not an adequate basis for an adverse credibility finding." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Any discrepancies must involve the heart of the claim. Id.[2]

The IJ identified several factors supporting his adverse credibility finding: (1) inconsistencies between Sasongko's 2003 and 2004 asylum applications; (2) Sasongko was unable to provide exact dates of the sexual assaults; (3) Sasongko's claims did not make sense because a homosexual would not attack another homosexual; (4) Sasongko's 2004 asylum application referenced only one violent incident in 2001, did not mention

---

[2] The provisions of the Real ID Act of 2005 regarding review of adverse credibility findings do not apply to cases such as this one, where the asylum application was filed long before the enactment of the Real ID Act. Real ID Act of 2005, Pub. L. No. 109-13, Div. B, § 101, 119 Stat. 231 (May 11, 2005).

that he had been sodomized during that incident, and did not mention two earlier incidents; (5) the police report regarding the 2001 incident did not mention a sexual assault and described the assault as occurring at an intersection, rather than behind a café as Sasongko had testified; and (6) the hospital report regarding the 2001 incident did not mention any sexual assault.

The first three factors do not necessarily support an adverse credibility finding. As noted above, we will assume for the sake of argument that Sasongko was unaware of the contents of his 2003 asylum application, and we will not consider inconsistencies between that application and his later application. Although Sasongko was unable to provide exact dates of the two earlier assaults, he was able to tell approximately when they happened (July or August of 1994, one day after Ramadan in 1996). We find his inability to further pinpoint the dates is a minor problem. As to the third factor, we note that Sasongko testified he was not sure whether his attackers were homosexual or not. In any event, we do not see that the sexual identity of his attackers is particularly relevant, so long as Sasongko was persecuted on account of his homosexuality.

However, we find the adverse credibility finding supported by the last three factors. Sasongko's written statement in support of his asylum application references only the 2001 incident. A.R. 184-85. Sasongko testified that he only included one incident in his application, "Because the last incident was the incident that made my life history became [sic] dark." A.R. 140. Sasongko was not responsive when asked why he

4

did not include the fact that he was sodomized in his application, see A.R. 140-41, and we note that his written statement was otherwise quite detailed. We find that Sasongko's failure to include the two earlier assaults, and his failure to include a major detail of the 2001 assault, supports an adverse credibility finding.

Further, the IJ properly considered that the two reports in the record do not entirely corroborate Sasongko's claims. Sasongko claimed that he did not want to tell the police that he was sexually assaulted, because he was afraid. A.R. 125. This may be, but he did not explain why he changed other major details; e.g., telling the police that his items were taken at a traffic light rather than in an alley. A.R. 187 (police report). He also did not explain why the hospital report does not reflect a sexual assault. A.R. 190 (hospital report).

Based on the foregoing, we conclude that the evidence was not "so compelling that no reasonable factfinder could conclude as the [IJ] did." Kayembe, 334 F.3d at 234. Because the IJ's adverse credibility finding was supported by substantial evidence, we will deny the petition for review.[3]

---

[3] We agree with the Government that because Sasongko did not raise his due process argument in his brief to the BIA, it is unexhausted and we may not address it. 8 U.S.C. § 1252(d)(1). As to his claim for CAT relief, we find his argument, that he presented evidence that the Government of Indonesia proposed in 2003 to outlaw homosexuality, to be insufficient to meet his burden of showing that it is more likely than not that he will be tortured in Indonesia. There is no evidence that such a law ever passed, nor is there evidence that Sasongko will likely be arrested, let alone tortured, under such a law.